JAMES ANDREW HINDS, JR. (SBN 71222)
jhinds@jhindslaw.com
PAUL R. SHANKMAN (SBN 113608)
pshankman@jhindslaw.com
BAROUIR BRIAN YERETZIAN (SBN 278519)
byeretzian@jhindslaw.com
HINDS & SHANKMAN, LLP
Attorneys and Counselors
21515 Hawthorne Blvd., Suite 1150
Torrance, California  90503
Telephone: (310) 316-0500
Facsimile: (310) 792-5977

Attorney for Plaintiffs and Judgment Creditors

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | ) Case No. 2:12-bk-16195-RK |
| | ) |
| DAVID A. WILSON, | ) (Chapter 7) |
| | ) |
| Debtor. | ) Adv. No. 2:12-ap-01317-RK |
| _____ | ) |
| | ) **STIPULATION RE: JUDGMENT** |
| THOMAS I. MCKNEW, IV and LISA | ) **CREDITORS' MOTION TO COMPEL** |
| A. MCKNEW, individually and as | ) **DEBTOR, DAVID ALAN WILSON, TO** |
| Trustees of the MCKNEW FAMILY | ) **ANSWER QUESTIONS POSED TO** |
| TRUST DATED MAY 21, 2004, | ) **HIM AT HIS JUDGMENT DEBTOR** |
| | ) **EXAM AND THE PARTIES'** |
| Plaintiffs, | ) **SEPARATE REQUESTS FOR** |
| | ) **DISCOVERY SANCTIONS;** |
| vs. | ) **DECLARATIONS OF JAMES** |
| | ) **ANDREW HINDS, JR., AND ALI** |
| DAVID A. WILSON, | ) **MATIN IN SUPPORT** |
| | ) |
| Defendant. | ) [Fed. R. Bankr. P. 7030 and 7037; L. |
| | ) Bank. R. 7026-1(c)(3)] |
| | ) |
| | ) DATE:    January 20, 2015 |
| | ) TIME:    2:30 p.m. |
| | ) PLACE:  Courtroom 1675 |
| | )                255 E. Temple Street |
| _____ | )                Los Angeles, CA 90012 |

**TO THE HONORABLE ROBERT N. KWAN, U.S. BANKRUPTCY JUDGE, TO THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on January 20, 2015, at the hour of 2:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Robert N. Kwan, United States Bankruptcy Judge, in his courtroom located at 255 E. Temple Street, Courtroom 1665, Los Angeles, CA 90012, the Plaintiffs and Judgment Creditors herein, Thomas I. McKnew, IV and Lisa A. McKnew, individually and as Trustees of The McKnew Family Trust Dated May 21, 2004 (hereinafter collectively referred to as the "Judgment Creditors" or "Plaintiffs"), will move the Court to compel answers (hereinafter referred to as the "Motion to Compel") from the Defendant and Debtor, David Alan Wilson (hereinafter referred to as the "Judgment Debtor") to the questions posed to him by Judgment Creditors at his judgment debtor exam which occurred on August 20, 2014 (hereinafter referred to as the "Wilson JDE").  This Stipulation Re: Motion to Compel is made and is based upon, as applicable, Federal Rules of Civil Procedure 30, and 37 made applicable to this matter by Federal Rules of Bankruptcy Procedure, Rules 7034 and 7037, Code Civ. Proc., sections 708.110–708.205, and the California Civil Discovery Act.  This Stipulation Re: Motion to Compel is further made and is based upon the Judgment Debtor's assertion of the Fifth Amendment during the Wilson JDE.

**PLEASE TAKE NOTICE** that pursuant to Bankruptcy Rule 7037, the Judgment Creditors and Mr. Wilson move the court for separate cross-awards of the attorneys' fees and costs for bringing this Motion and for having to respond to the Motion, respectively, and for such other and further relief as this Court deems just and proper.

/ / /

**PLEASE TAKE FURTHER NOTICE** that this Stipulation Re: Motion to Compel is made and is based upon this Stipulation, the papers and pleadings on file in this matter, and such other and further evidence, oral and documentary, as made be timely submitted to the Court at or prior to the leasing on this matter.

Dated: December 16, 2014                 Respectfully submitted,

                                         HINDS & SHANKMAN, LLP
                                         James Andrew Hinds, Jr.
                                         Paul R. Shankman
                                         Brian Yeretzian

                                         By:   /s/  James Andrew Hinds, Jr.
                                               James Andrew Hinds, Jr.
                                         Attorneys for Plaintiffs and Judgment Creditors
                                         Thomas I. McKnew, IV and Lisa A. McKnew,
                                         individually and as Trustees of the McKnew Family
                                         Trust Dated May 21, 2004

# TABLE OF CONTENTS

**PAGE NO.**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT.......................................... 1

   A.  The Judgment Creditors' Introduction and Summary of Argument.....................1

   B.  Mr. Wilson's Introduction and Summary of Argument..................................... 1

II.    STATEMENT OF FACTS......................................................................... 3

   A.  The Judgment Creditors' Statement of Facts...................................................... 3

   B.  Mr. Wilson's Statement of Facts........................................................................ 4

     1.  The McKnews' Allege that Mr. Wilson Committed Bank Fraud......................... 5

     2.  The McKnews State that there is a Pending FBI Investigation and
        Intend to use the JDE to Exculpate Themselves of Purported Wrongdoing......... 6

     3.  The McKnews Do Not Deny that there is a Pending FBI
        Investigation.................................. ..........................................................7

III.    ARGUMENT..................................................................................... 8

   A.  The Judgment Creditors' Argument................................................................ 8

     1.  The Assertions of the Protections of the Fifth Amendment are Not
        Without Limitations and the Use of the Fifth Amendment Must
        Allow this Court to Determine Whether the Right has been
        Properly E1.mployed by the Judgment Debtor in this Case............................. 8

        a. The Applicable Federal Standard this Court Must Apply........................... 9

        b. The Debtor did Not have Reasonable Cause to Apprehend
           Danger and thus Improperly Asserted the Fifth Amendment Objection
           in Failing to Answer Many of the Questions at the Wilson JDE....................10

        c. The Judgment Debtor Improperly Asserted the Fifth Amendment
           and Refused to Answer Questions for Which a Response would Not Result
           in Injurious Disclosure.............................................................................12

        d. Due to the Judgment Debtor's Improper Assertions of the
           Fifth Amendment Claims, this Court Should Require the Judgment Debtor
           to Answer All of the Questions Posed to Him at the Wilson JDE...................13

# TABLE OF CONTENTS

**PAGE NO.**

2.  The Judgment Debtor's Failure to Provide Responses During the Wilson
    JDE is Sanctionable Under Fed. R. Bankr. P. 7037....................................14

B.  Mr. Wilson's Argument...............................................................................16

1.  Mr. Wilson has Reasonable Apprehension of Fear Based on the McKnew's
    Repeated Assertions of an FBI Investigation and their Intent to use the JDE
    for an Improper and Abusive Purpose.......................................................16

2.  The McKnews' Analysis of the Fifth Amendment Ignores Their Repeated
    Statements to Mr. Wilson..........................................................................18

3.  The McKnews should be Judicially Estopped from Bringing a Motion
    to Compel Contradicting their Prior Positions, because it
    Takes Unfair Advantage of Mr. Wilson.....................................................19

4.  Mr. Wilson's Assertion of the Privilege is Substantially Justified
    and Not Sanctionable................................................................................21

5.  The McKnews' Motion and Failure to Acknowledge the Basis for
    Mr. Wilson's Apprehension is Sanctionable.............................................22

V.    CONCLUSION.............................................................................................24

A.  The Judgment Creditors' Conclusion .......................................................24

B.  Mr. Wilson's Conclusion...........................................................................24

# TABLE OF AUTHORITIES

**CASES**

PAGE NO.

Barton Bus. Park Associates v. Alexander (In re Barton Bus. Park Associates),
  118 B.R. 776, 780 (Bankr. E.D. Cal. 1990) ........................................16

Blackburn v. Superior Court,
  21 Cal.App.4th 414, 427 (Cal. Ct. App. 1993).........................................13, 14

Fisher v. Gibson,
  90 Cal.App.4th 275, 286 (Cal. Ct. App. 2001).........................................15

Hamilton v. State Farm Fire & Cas. Co.,
  270 F.3d 778, 782 (9th Cir. 2001) ........................................20

Hoffman v. United States,
  341 U.S. 479, 486-87 (1951).........................................8, 9, 10, 12, 14, 16

In re Candor Diamond Corp.,
  21 B.R. 147, 152 (Bankr. S.D.N.Y. 1982) ........................................9

In re Connelly,
  59 B.R. 421, 433 (Bankr. N.D. Ill. 1986).........................................9

In re Master Key Litig.,
  507 F.2d 292, 293 (9th Cir. 1974) ........................................17

In re Morganroth,
  718 F.2d 161, 168 (6th Cir. 1983) ........................................14

In re Morreale Hotels LLC,
  517 B.R. 184, 199 (Bankr. C.D. Cal. 2014) ........................................21

Maness v. Meyers,
  419 U.S. 449, 461 (1975).........................................16

Marchetti v. United States,
  390 U.S. 39 (1968)................................................................................................9

Nguyen v. Proton Tech. Corp.,
  69 Cal. App. 4th 140, 152 (1999) .........................................................................20

Ohio v. Reiner,
  532 U.S. 17 (2001) (quoting Grunewald v. U.S., 353 U.S. 391, 421 (1957)............16, 17

People v. Ford,
  754 P.2d 168, 173 (Cal. 1988) ..............................................................................9

People v. Lucas,
  907 P.2d 373, 397 (Cal. 1995) ............................................................................12

People v. Seijas,
  114 P.3d 742, 750 (Cal. 2005) ............................................................................10

Simmons v. State,
  896 A.2d 1023, 1034 (Md. Ct. App. 2006) ..........................................................8, 9

Rudy-Glanzer v. Glanzer,
  232 F.3d 1258, 1263 (9th Cir. 2000) ...................................................................16

Troy v. Superior Court,
  186 Cal.App.3d 1006, 1010 (Cal. Ct. App. 1986)..................................................12

U.S. v. Argomaniz,
  925 F. 2d 1349 (11th Cir. 1991)............................................................................9

U.S. v. Sharp,
  920 F.2d 1167, 1170 (4th Cir. 1990) ...................................................................14

Ullmann v. U.S.,
  350 U.S. 422, 427 (1956).....................................................................................16

United States v. Bodwell,
    66 F.3d 1000, 1001 (9th Cir. 1995) ............................................................................17

Warford v. Medeiros,
    160 Cal.App.3d 1035, 1045 (Cal. Ct. App. 1984) .........................................................13

**Statutes**

United States Constitution
U.S. CONST. amend. V................................................................................. ..............8

California Constitution
CAL. CONST. art. I, § 15 .................................................................................................8

United States Code
11 U.S.C. § 523(a)(2)(A)-(B), (4) ...............................................................................3

Federal Rule of Bankruptcy Procedure
Fed. R. Bankr. P. 7037(a)(4) .......................................................................................15
Fed. R. Bankr. P. 7034 and 7037 .................................................................................2

Local Bankruptcy Rule
L. Bankr. R. 9014(c) ....................................................................................................15

California Code of Civil Procedure
Cal. Code Civ. Proc. §§ 708.110–708.205 ...............................................................2, 14

California Evidence Code
Cal. Evid. Code § 940 ...................................................................................................8

## MEMORANDUM OF POINTS & AUTHORITIES

### I.

### INTRODUCTION AND SUMMARY OF ARGUMENT

A.      The Judgment Creditors' Introduction and Summary of Argument

On August 20, 2014, the Judgment Debtor, David A. Wilson, appeared for his judgment debtor exam and refused to answer a majority of the questions posed to him by the Judgment Creditors, asserting his Fifth Amendment privilege against self-incrimination.  The Judgment Debtor has employed his Fifth Amendment rights to completely shield from the Judgment Creditors any and all information on his available assets to satisfy the outstanding judgment (and amended judgment) entered by this Court.  By this Motion the Judgment Creditors seek two orders from this Court.  First, an Order which reasonably and rationally defines the scope of the Judgment Debtor's Fifth Amendment rights without unfairly shutting out all information on the Judgment Debtor's available assets from discovery as allowed by controlling state law.  Second, an order of this Court which assesses sanctions against the Judgment Debtor for his unreasonable assertion of the Fifth Amendment right to delay the Judgment Creditors' right to obtain assess to reasonable information on the Judgment Debtor's assets in aid of collection of the Judgment.

B.      Mr. Wilson's Introduction and Summary of Argument

A civil litigant's assertion of his Fifth Amendment rights should be sustained where, as here, there is a **reasonable** apprehension of **possible** criminal action.  During his Judgment Debtor Examination ("JDE"), Mr. Wilson invoked his Fifth Amendment rights in response to questions asked involving financial information or questions that could be a link to a chain regarding financial information because of reasonable apprehension of possible criminal action relating to his financial dealings.  This apprehension is more than reasonable under the circumstances given that his examiners, the McKnews, have:

/ / /

1.      Filed post-judgment documents with the Court in which they accuse Mr. Wilson of bank fraud;

2.      Represented that there is an FBI investigation of, among potentially other things, financial dealings involving Mr. Wilson and the McKnews;

3.      Indicated that the examination testimony will, in one way or another, be presented to the FBI an in effort to exculpate the McKnews from any purported wrongdoing.

Mr. Wilson has repeatedly requested from the McKnews more information regarding the investigation, such as the name of the FBI agent(s) conducting the investigation.  He has been told that such information is forthcoming, but has yet to receive it.  Mr. Wilson has also repeatedly asked his examiners why his apprehension of possible criminal action is **not** reasonable in light of their repeated representations, but has yet to receive a meaningful response.  Indeed, based on their representations and efforts to misuse the JDE process for a matter unrelated to judgment collection, the McKnews have **themselves exhibited fear of a possible criminal action**.

In short, the McKnews are using the JDE process to extract information that relates to an FBI investigation and potentially self-incriminating testimony from Mr. Wilson to absolve themselves from any purported wrongdoing, which is completely contrary to the purpose of a JDE and is exactly what the Fifth Amendment privilege is intended to protect. Either their assertions regarding the criminal investigation are true and the McKnews are misusing the civil process for criminal-related matters (in which case the Fifth Amendment is implicated) or they are not true (in which case the McKnews should be judicially estopped from compelling testimony based on their false assertions).

Accordingly, the Court should sustain Mr. Wilson's assertion of the Fifth Amendment. The Court should also award Mr. Wilson attorneys' fees given that there is no substantial justification for the McKnews to seek to compel answers in light of their admitted attempt to use the JDE process for an improper and abusive purpose.

/ / /

/ / /

1
2

## II.

## STATEMENT OF FACTS

3

4    A.    The Judgment Creditors' Statement of Facts

5        Judgment Debtor, David A. Wilson, filed his underlying Chapter 7 petition on August

6    13, 2008. See Bankr. Docket Item No.: 1. On January 26, 2009, the Plaintiffs initiated this

7    adversary proceeding by filing a complaint against the Debtor objecting to the discharge of

8    their claim pursuant 11 U.S.C. § 523(a)(2)(A)-(B), (4) and (6) See Adv. Docket Item No.: 1.

9    On September 27, 2013, this Court filed the Memorandum Decision and found that Plaintiffs

10   had established the five elements of a section 523(a)(2)(A) and found the $2,500,000.00

11   debt owed to Plaintiffs by Wilson to be non-dischargeable (the "Memorandum Decision").

12   See Adv. Docket Item No.: 221. On October 10, 2013, this Court entered a Judgment in

13   favor of Plaintiffs and against Debtor for $2,500,000.00. See Adv. Docket Item No.: 236.

14   On February 26, 2014, this Court entered an Order awarding Plaintiffs pre-judgment

15   interest. See Adv. Docket Item No.: 284. On April 3, 2014, this Court entered an Amended

16   Judgment in favor of Plaintiffs and against Debtor for $3,359,858.05 (the "Amended

17   Judgment"). See Adv. Docket Item No: 297.

18        In an attempt to obtain information to aid in enforcement of the Judgment (and later

19   the Amended Judgment), Judgment Creditors filed an Application and Order for

20   Appearance and Examination (hereinafter referred to as the "Wilson JDE Application") on

21   April 1, 2014, requesting that the Court order the Debtor to appear for a judgment debtor

22   exam before the Court. See Adv. Docket Item No.: 275.   On June 4, 2014, the Judgment

23   Creditors and the Debtor filed a Stipulation Regarding Creditors' Motion for Order

24   Authorizing Examination of David A. Wilson Pursuant to Federal Rule of Bankruptcy

25   Procedure 2004 and Authorizing and Setting Date for Judgment Debtor Examine of David

26   A. Wilson (the "Wilson JDE Stipulation") setting August 20, 2014 as the date for the Wilson

27   JDE. See Adv. Docket Item No.: 312. On June 5, 2014, the Court entered an Order

28   approving the Wilson JDE Stipulation. See Adv. Docket Item No.: 315.

The Judgment Creditors duly served the Judgment Debtor with a Request for Production of Documents and Things in conjunction with the schedules Judgment Debtor Exam. The Judgment Debtor responded to the Request for Production of Documents and Things objected to each category of documents on the basis of the Fifth Amendment. The Debtor appeared for the Wilson JDE on August 20, 2014.  <u>See</u> Declaration of James Andrew Hinds, Jr. in Support of Motion to Compel (the "Hinds Dec.") at ¶¶ 2 and 3. A true and correct copy of the Wilson JDE transcript is attached to the Hinds Dec. as Exhibit "1" and is incorporated herein by this reference as if set forth in full. During the course of the Wilson JDE, the Debtor refused to answer a majority of the questions posed to him by Judgment Creditors by improperly asserting his Fifth Amendment Rights.  <u>See</u> Hinds Dec. at ¶ 3.

Thus, effectively, the Judgment Debtor has employed his Fifth Amendment Rights to completely shield from the Judgment Creditors any and all information on his available assets to satisfy the outstanding Judgment entered by this Court.

B.    <u>Mr. Wilson's Statement of Facts</u>

In connection with efforts to resolve a dispute regarding a pending Rule 2004 examination in the main bankruptcy case, Mr. Wilson stipulated to appear at a Judgment Debtor Examination ("JDE") on August 20, 2014 and produce certain documents in advance of the JDE, subject to any all applicable objections (the "Stipulation").[1]  <u>See</u> Adv. Dkt. Nos. 188 (Stipulation) and 190 (order approving the Stipulation). Under the Stipulation, the Rule 2004 examination was taken off calendar.  <u>Id.</u>  Mr. Wilson appeared at the JDE on August 20, 2014.   During the JDE, Mr. Wilson asserted his Fifth Amendment privilege.   The disputed questions to which Mr. Wilson asserted the privilege are set forth in a table attached as Exhibit 2 to the Hinds Declaration.

---

[1] Mr. Wilson served objections to the McKnews' document request on July 18, 2014. The McKnews are not seeking to compel production of documents, and document production objections are not at issue.

1.    <u>The McKnews' Allege that Mr. Wilson Committed Bank Fraud</u>

On March 26, 2014, the McKnews filed a Notice of Motion and Motion for Order Authorizing Examination of David A. Wilson Pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004 Motion").    <u>See</u> Dkt. No. 160 (Rule 2004 Motion).    The McKnews attached as exhibits to the Rule 2004 Motion email communications between their counsel and Mr. Wilson's then bankruptcy counsel, Michael Nicastro.    <u>See id</u>.    (Rule 2004 Motion at Exhibit 3).

In an email dated March 20, 2014, attached to the Rule 2004 Motion, the McKnews' counsel stated:

> Yes, Mr. McKnew has a Judgment but **we have recently discovered that Mr. Wilson and his partners engaged in a fraud against a federally insured bank and various bonding companies** by sharing with these third-parties the same bogus financials on Mr. Wilson and American General which Messrs. Wilson and Hurst used with Mr. McKnew and which Messrs. Wilson and Hurst testified about during our trial. **The chapter 7 case of Mr. Wilson and the testimony given at trial has now taken on a new and different tone.**

<u>Id.</u> (Rule 2004 Motion at Exhibit 3) (emphasis added); <u>see also</u> accompanying Declaration of Michael Nicastro ("Nicastro Decl.") at Exhibit 1.  Mr. Nicastro responded to the McKnews accusations of bank fraud, stating, among other things, that using a Rule 2004 Examination to obtain information regarding a purported criminal act was improper:

> Thank you for letting us know the intent and purpose of a proposed 2004 examination by your client.  We strongly believe that a 2004 examination under these circumstances is in appropriate and our client will strongly object . . . . We appreciate the candor regarding your client's intent in pursuing a 2004 examination order.  But, the not so subtle allegations of "Fraud against a federally insured bank" and the Chapter 7 case taking on a "New tone" reveal the real motivation of your client which is to merely abuse and harass Mr. Wilson by **seeking discovery into matters that are not related to his discharge, the administration of the case or the collection on your client's obligation application for such an order.**

Docket No. 188 (Rule 2004 Motion at Exhibit 3) (emphasis added); <u>see also</u> Nicastro Decl. at Exhibit 1.

/ / /

/ / /

2.      <u>The McKnews State that there is a Pending FBI Investigation and Intend to use the JDE to Exculpate Themselves of Purported Wrongdoing</u>

Just prior to the initial hearing on the Rule 2004 Motion and outside of the courtroom, the McKnews' counsel informed Mr. Nicastro that Mr. McKnew was contacted by an FBI agent regarding Mr. McKnew's business dealings with Mr. Wilson. <u>See</u> Nicastro Decl ¶ 3. The McKnews' counsel related to Mr. Nicastro his client's concern of a pending investigation by the FBI regarding those business dealings. <u>Id.</u> Specifically, it was represented to Mr. Nicastro that an FBI agent contacted Mr. McKnew seeking information regarding financials that the McKnews supplied to a lender and/or other third parties. <u>Id.</u>

Critically, the McKnews' counsel indicated to Mr. Nicastro that **the primary purpose** of eliciting testimony and information from Mr. Wilson in an examination context was to **present such testimony and information to the FBI to clear Mr. McKnew of any purported wrongdoing in connection with any FBI investigation.** Nicastro Decl. ¶ 4. Mr. Nicastro followed up with the McKnews' counsel regarding the identity of the FBI agent, and, although counsel indicated that he would get back to Mr. Nicastro with that information, it was never provided. <u>See</u> <u>id.</u> ¶ 5.

Indeed, the McKnews' assertion of a pending FBI Investigation (and Mr. Wilson's request for more information) is reflected in multiple correspondence between the McKnews' counsel and Mr. Nicastro as follows:

- On April 29, 2014, Mr. Nicastro sought more information from the McKnews' counsel regarding their assertion of a pending investigation, inquiring: "In addition, do you have any further information regarding the FBI Agent that contacted your client, such as, name, what office they operate out of, etc.?" <u>See</u> Nicastro Decl. at Exhibit 2, true and correct copies of email correspondence between counsel.

- On the same day, the McKnews' counsel responded: "**As to the agent, I'll see what data Mr. McKnew has on that point.**" <u>Id.</u> (emphasis added)

/ / /

/ / /

- On May 13, 2014, Mr. Nicastro again sought more information from the McKnews' counsel regarding their assertion of a pending FBI investigation, inquiring: "Also, have you heard back from your client re: the identity of the FBI agent who made contact with him?" <u>See</u> Nicastro Decl. at Exhibit 3, true and correct copies of email correspondence between counsel.   In his next email to Mr. Nicastro, the McKnews' counsel did not respond to that portion of the inquiry. <u>Id.</u>

- On May 15, 2014, Mr. Nicastro yet again inquired on the status of the FBI investigation, inquiring: "Have you obtained that FBI agent information from your client?  I know a few FBI agents and they always carry a business card.  If you can send a scan of that agent's business card, that will suffice." <u>See id.</u>

- On the same day, the McKnews' counsel responded: "**Tom was looking for this last week.  I'll follow up this afternoon.**" <u>Id.</u> (emphasis added).  "Tom" is apparently a reference to Thomas McKnew.

To date, the McKnews' counsel have not provided additional information regarding the FBI agent referenced in the foregoing emails, nor have they provided additional information regarding the FBI's investigation.

    3.    <u>The McKnews Do Not Deny that there is a Pending FBI Investigation.</u>

As part of the parties' meet and confer discussions leading to the instant Stipulation, Mr. Wilson repeatedly inquired why the McKnews' representations regarding a pending investigation does not create a reasonable apprehension of criminal action.   See accompanying Declaration of Ali Matin ("Matin Decl.") at Exhibits 4-5, true and correct email communications between the parties.   The McKnews finally responded: "third-party, unsubstantiated comments from someone unconnected with law enforcement do not support the assertion of the 5th amendment privilege." <u>See</u> Matin Decl. at Exhibit 5.   The McKnews did not acknowledge that those "unsubstantiated comments" were representations made **directly by McKnews' counsel to Mr. Wilson's counsel** over the course of several months and in advance of the JDE.

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.

### ARGUMENT

A.    The Judgment Creditors' Argument

    1.    The Assertions of the Protections of the Fifth Amendment are Not Without Limitations and the Use of the Fifth Amendment Must Allow this Court to Determine Whether the Right has been Properly Employed by the Judgment Debtor in this Case

    The language of the Fifth Amendment is clear, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." See U.S. CONST. amend. V.  Though appearing to apply only to testimony sought to be compelled in a criminal case,  the Supreme Court has given a broader interpretation to the privilege, holding that it not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.  See Lefkowitz v. Turley, 414 U.S. 70, 77 (1973).  The same right is guaranteed under the California Constitution and by state statute. See CAL. CONST. art. I, § 15; Cal. Evid. Code § 940.

    The mere assertion of the privilege, however, does not excuse the witness from testifying.  Rather, "[i]t is for the court to say whether his silence is justified, and to require [the witness] to answer, if it clearly appears to the court that [the witness] is mistaken" in relying on the privilege for the refusal to testify. See Hoffman v. United States, 341 U.S. 479, 486-87 (1951); Simmons v. State, 896 A.2d 1023, 1034 (Md. Ct. App. 2006).  Thus, tough the Fifth Amendment privilege is a broad one, it cannot, as explained below, be asserted as an objection and refusal to answer questions, without proper basis for the assertion. The Debtor's testimony at the Wilson JDE failed to establish the basis, if any, for asserting the Fifth Amendment objection.

///

///

a.    The Applicable Federal Standard this Court Must Apply

The standard that guides the courts in deciding whether the witness can invoke the privilege is whether "the witness has reasonable cause to apprehend danger from" answering a direct question or producing documents demanded. Hoffman, supra, 341 U.S. at 486. Further, "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Hoffman, supra, at 486-87; Simmons, supra, at 1034. It must be shown that the witness must be confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." See Marchetti v. United States, 390 U.S. 39 (1968). Thus, under the Hoffman standard, a court must conduct a two-part inquiry: "(1) whether there is a reasonable basis for the invocation of the privilege; and (2) whether the privilege is invoked in good faith[.]" Simmons, supra, 896 A.2d at 1034. During the Wilson JDE, the Debtor failed to provide, under oath, any basis for believing that he was subject to investigation or prosecution in some future criminal proceedings. See Lefkowitz, supra.

Because the privilege against self-incrimination applies only in "instances where the witness has reasonable cause to apprehend danger" of criminal liability, the deposing lawyer should assess in advance, in light of what counsel knows about the case, whether the witness has a realistic basis for such a fear. Hoffman, supra, 341 U.S. at 486, quoted in See U.S. v. Argomaniz, 925 F. 2d 1349 (11th Cir. 1991). A witness's "say-so does not of itself establish the hazard of incrimination." Hoffman, supra, 341 U.S. at 486; see also In re Connelly, 59 B.R. 421, 433 (Bankr. N.D. Ill. 1986) ("Debtor 'is not exonerated from answering merely because he declares in doing so he would incriminate himself.' . . .[citing Hoffman]"; In re Candor Diamond Corp., 21 B.R. 147, 152 (Bankr. S.D.N.Y. 1982). The initial burden is on the witness claiming the privilege to show that the requested answer might tend to incriminate him. See People v. Ford, 754 P.2d 168, 173 (Cal. 1988). "The witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself — his say-so does not of itself establish the hazard of

1  incrimination." See People v. Seijas, 114 P.3d 742, 750 (Cal. 2005), quoting Hoffman,

2  supra, at 486.

3      In reviewing the Debtor's bankruptcy case, the instant adversary proceeding, and

4  surrounding issues, it is now clear that throughout more than five-years of litigation with the

5  Judgment Creditors and others that the Debtor has not been contacted by any state or

6  federal prosecuting authority or investigative agency, such as the FBI, a state agency, a

7  sheriff's office, or a local police department, relative to any present or proposed criminal

8  investigation.  If any of these events had happened, such events would provide a sufficient

9  basis for the Debtor's assertion of the Fifth Amendment.  Without this kind of showing, the

10  Debtor is required to answer questions asked to him at the Wilson JDE.

11      b.    The Debtor did Not have Reasonable Cause to Apprehend Danger and

12      thus Improperly Asserted the Fifth Amendment Objection in Failing to

13      Answer Many of the Questions at the Wilson JDE

14      As shown below, at the Judgment Debtor Exam conducted in this matter the

15  Judgment Creditors asked questions designed to lay a foundation, of one existed, for the

16  Judgment Debtor's assertion of the a Fifth Amendment Right.  Specially, questions were

17  directed to Mr. Wilson regarding any contact he or his lawyers may have had with any state,

18  federal, and administrative agency.  The Debtor was instructed (and in fact followed his

19  lawyer's instruction) to not answer any of the preliminary questions.  See Hinds Dec. at ¶ 3.

20  Hence, as argued below, the conduct of the Judgment Debtor expressly inhibits the ability of

21  this Court to assess and determine the bona fides of the Fifth Amendment Right claim.

22      The Judgment Debtor may turn to third-party out of court statement allegedly made

23  by counsel for the Judgment Creditors as a basis for the assertion of the Fifth Amendment

24  Right claim.  As argued below, this is insufficient to meet the controlling federal standard

25  applicable in this context.

26      The table below lists the questions posed to the Judgment Debtor at the Wilson JDE

27  and the Debtor's corresponding Fifth Amendment objection.  The purpose of these

28  questions was to establish the basis, if one existed, for the Judgment Debtor's assertion of

the Fifth Amendment claim. Thus, the record, as it presently stands Judgment Debtor's

failure to answer these preliminary questions prohibits this Court from assessing the bona

fides of the Judgment Debtor's Fifth Amendment claims in this case.

| QUESTIONS | ANSWERS[2] |
|---|---|
| MR. HINDS: All right. Sir, tell me, have you been contacted by any detective, sheriff or judicial officer concerning a claim of criminal conduct?<br><br>See Wilson JDE Transcript, Exhibit "1" attached hereto, at 13:7-9. | MR. KATZMAN: Objection. I'm directing my client not to answer on the basis of the Fifth Amendment.<br><br>See id., at 13:10-12. |
| MR. HINDS: Have you received any contact or communication from any judicial officer or prosecutor regarding any alleged criminal conduct?<br><br>See id., at 14:24-25; 15:1. | MR. KATZMAN: Objection. Fifth Amendment.<br><br>See id., at 15:2. |
| MR. HINDS: Have you been subpoenaed in any matter by any judicial officer in regard to a criminal accusation?<br><br>See id., at 15:3-5. | MR. KATZMAN: Objection. Fifth Amendment and form.<br><br>See id., at 15:6. |
| MR. HINDS: Have any lawyers representing you been contacted by any judicial or prosecutorial officer regarding any alleged criminal conduct?<br><br>See Wilson JDE Transcript, Exhibit "1" attached hereto, at 15:7-9. | MR. KATZMAN: Objection. Fifth Amendment and calls for privileged communications.<br><br>See id., at 15:10-11. |
| MR. HINDS: Have any lawyers representing you been contacted by any judicial or prosecutorial officer regarding any alleged criminal conduct?<br><br>See Wilson JDE Transcript, Exhibit "1" attached hereto, at 15:7-9. | MR. KATZMAN: Objection. Fifth Amendment and calls for privileged communications.<br><br>See id., at 15:10-11. |

---

[2] In an effort to streamline the JDE, the parties stipulated on the record that, instead of having counsel for Mr. Wilson (Steven Katzman) instruct the witness not to answer on Fifth Amendment grounds (at which point Mr. Wilson would invoke then privilege), counsel would make the objection, and Mr. Wilson would be deemed to have followed the instruction and to have invoked the privilege. See D. Wilson Tr. 13:10-14:21.

c.   The Judgment Debtor Improperly Asserted the Fifth Amendment and

Refused to Answer Questions for Which a Response would Not Result

in Injurious Disclosure

Under California law "[t]he privilege against self-incrimination applies in judgment

debtor proceedings." See Troy v. Superior Court, 186 Cal.App.3d 1006, 1010 (Cal. Ct. App.

1986). "But this protection must be confined to instances where the witness has reasonable

cause to apprehend danger from a direct answer. . . . To sustain the privilege, it need only

be evident from the implications of the question, in the setting in which it is asked, that a

responsive answer to the question or an explanation of why it cannot be answered might be

dangerous because injurious disclosure could result." Hoffman, supra, at 486–87; accord,

See Blackburn v. Superior Court, 21 Cal.App.4th 414, 427 (Cal. Ct. App. 1993.

In determining the application of the Fifth Amendment to questions asked at the

Wilson JDE, the Court will be required to make a particularized inquiry as to whether a claim

of privilege is properly invoked, tailored to the circumstances of the case. See People v.

Lucas, 907 P.2d 373, 397 (Cal. 1995); Blackburn v. Superior Court, 21 Cal.App.4th 414,

429 (Cal. Ct. App. 1993). Factors that may be consider include: "'1) the nature of the

information sought to be disclosed, 2) implications derived from the questions asked, 3) the

nature and verifiability of any investigation or proceeding claimed to justify the fear of

incrimination, or the possibility that any such investigation or proceeding may be

commenced, 4) matters disclosed by counsel in argument on the claim of privilege, and 5)

evidence previously admitted.'" Blackburn, supra, at 429.

At the Wilson JDE, the Debtor refused to answer a majority of the questions posed to

him based on his assertion of the Fifth Amendment. See Hinds Dec. at ¶ 3. However, none

of the questions posed to him required the Debtor to provide a response that could result in

"injurious disclosure." See Hinds Dec. at ¶ 5. The questions posed to the Debtor at the

Wilson JDE focused on identifying sources of income for the Debtor, identifying the Debtor's

various assets (including bank accounts and life insurance policies), and obtaining an

understanding of the Debtor's financial condition. The nature of the information sought to

1  be disclosed by the questions posed to Wilson at the Wilson JDE were information to aid in

2  the collection and enforcement of the Judgment Creditors' Amended Judgment.  See Hinds

3  Dec. at ¶ 5.  The only implications derived from the questions asked relate to Debtor's

4  financial condition; no criminal implications could have been derived by these questions.

5  See Hinds Dec. at ¶ 5.

6         A list of the questions posed to the Debtor at the Wilson JDE and the Debtor's

7  corresponding Fifth Amendment objection is attached to the Hinds Dec. as Exhibit "2" and is

8  incorporated herein by this reference as if set forth in full.  As it apparent from the questions

9  asked, none of them required a response from the Debtor that could result in "injurious

10  disclosure" and therefore merit the assertion of the Fifth Amendment.  Thus, the record, as it

11  presently stands, fails to show that the Blackburn factors can be met in this case.

12         d.     Due to the Judgment Debtor's Improper Assertions of the Fifth

13                Amendment Claims, this Court Should Require the Judgment Debtor to

14                Answer All of the Questions Posed to Him at the Wilson JDE

15         Like the many judgment debtors, the Debtor is attempting to distort the law.  Under

16  his view, the Fifth Amendment would provide a safe harbor him to totally avoid answering

17  any questions put to him and further avoid any effort to produce relevant documents to the

18  Judgment Creditors to levy on assets of Wilson.  Under California law "'[a] party is not

19  entitled to decide for himself whether he is protected by the Fifth Amendment privilege. . . .

20  [T]his question is for the court to decide after conducting "a particularized inquiry, deciding,

21  in connection with each specific area that the questioning party seeks to explore, whether or

22  not the privilege is well-founded." ". . . [A] blanket refusal to testify is unacceptable; a

23  person claiming the Fifth Amendment privilege must do so with specific reference to

24  particular questions asked or other evidence sought. . . . [O]nce this is done, the trial court

25  must undertake a particularized inquiry with respect to each specific claim of privilege to

26  determine whether the claimant has . . . establish[ed] that the testimony or other evidence

27  sought might tend to incriminate him." Warford v. Medeiros, 160 Cal.App.3d 1035, 1045

28

1  (Cal. Ct. App. 1984) (citations and italics omitted); accord, Fisher v. Gibson, 90 Cal.App.4th

2  275, 286 (Cal. Ct. App. 2001).

3        At a minimum, the Judgment Creditors must be allowed to conduct a judgment debtor

4  examination under Code Civ. Proc., sections 708.110–708.205 and in the context of the

5  judgment debtor exam obtain copies of Wilson's income tax returns and examine him about

6  their contents, subject only to legitimate assertions of confidentiality.  Although the Fifth

7  Amendment privilege may be asserted in bankruptcy proceedings, it must still be properly

8  asserted.  It is for the court to decide whether an invocation of the Fifth Amendment is

9  justified, and if so, to what extent.  See Hoffman, supra, 341 U.S. at 486; U.S. v. Sharp, 920

10  F.2d 1167, 1170 (4th Cir. 1990).  A court must be able to decide if assertion of the privilege

11  is justified and should require the defendant to answer if it clearly appears to the court that

12  the witness is mistaken in asserting the privilege.  See In re Morganroth, 718 F.2d 161, 168

13  (6th Cir. 1983).  In doing so, the court must be able to balance the witness's or party's

14  constitutional right to invoke the privilege against the litigant's right to information.  See id. at

15  170.

16        In the instant case, the Court should decide, on a question by question basis,

17  whether the assertion of the Fifth Amendment by Wilson at the Wilson JDE is justified.  The

18  Court should require the Debtor to answer those questions for which the Debtor's assertion

19  of the Fifth Amendment was not justified.  This will allow the Judgment Creditors to conduct

20  a meaningful judgment debtor exam of the Debtor, thereby providing them the opportunity to

21  obtain information to aid in their efforts to enforce the Amended Judgment against the

22  Debtor.

23        2.      The Judgment Debtor's Failure to Provide Responses During the Wilson JDE

24                is Sanctionable Under Fed. R. Bankr. P. 7037

25  Here, this Court issued Wilson JDE Order requiring that the Judgment Debtor appear and

26  answer questions about his assets in aid the Judgment Creditors' efforts to collect on their

27  Judgment in this case.  Rather than answer reasonable questions about his assets, Wilson

28  elected to follow his counsel's instruction and to hide behind the Fifth Amendment thus

1 denying the Judgment Creditors any meaningful data on the assets of the Debtor. This

2 Motion results from the failure of the Judgment Debtor to answer questions at the Wilson

3 JDE.

4       Federal Rule of Bankruptcy Procedure 7037(a)(4), applicable to this contested matter

5 via Bankruptcy Rule 9014(c), provides that if this Court grants a motion to compel discovery,

6 this Court shall, after affording an opportunity to be heard, require the party or deponent

7 whose conduct necessitated the motion or the party or  attorney advising such conduct or

8 both of them to pay the moving party the reasonable expenses incurred in making the

9 motion, including attorney's fees. . . .  In order to defeat the presumption in favor of

10 awarding expenses to the prevailing party of a motion to compel, this Court must make a

11 specific finding, such as that the failure to respond was substantially justified or that other

12 circumstances would make an award of expenses unjust.  Rule 7037(a)(4); <u>Barton Bus.</u>

13 <u>Park Associates v. Alexander (In re Barton Bus. Park Associates)</u>, 118 B.R. 776, 780

14 (Bankr. E.D. Cal. 1990).  The losing party bears the burden of persuading the court that the

15 court should not award the prevailing party's reasonable expenses.  <u>Barton Bus. Park</u>

16 <u>Associates</u>, 118 B.R. at 780.

17       Here the relief requested by the Judgment Creditors is two-fold.  First, that the

18 Judgment Debtor produce documents and things as requested as part of the Wilson JDE

19 and appear for a second JDE within 15-days of entry of this Court's Order granting this

20 Motion.  And second, for sanctions in the amount of $5,136.50.  <u>See</u> Hinds Dec. at ¶ 6.  A

21 true and correct copy of a spreadsheet showing the hours work in this Motion is attached to

22 the Hinds Dec. as Exhibit "3" and by this reference incorporated herein as if set forth in full.

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

B.    Mr. Wilson's Argument

  1. Mr. Wilson has Reasonable Apprehension of Fear Based on the McKnew's Repeated Assertions of an FBI Investigation and their Intent to use the JDE for an Improper and Abusive Purpose

  The privilege against self-incrimination applies broadly. Maness v. Meyers, 419 U.S. 449, 461 (1975) ("This Court has always broadly construed its protection to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action.") (emphasis added). As explained by the Supreme Court, the Fifth Amendment "does not merely encompass evidence which may lead to criminal conviction, but includes information which would **furnish a link in the chain of evidence** that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution." Id. (emphasis added).

  The Court has repeatedly "emphasized that one of the Fifth Amendment's 'basic functions . . . is to **protect innocent men . . . 'who otherwise might be ensnared by ambiguous circumstances.**' " Ohio v. Reiner, 532 U.S. 17 (2001) (quoting Grunewald v. U.S., 353 U.S. 391, 421 (1957)) (emphasis in original). Indeed, the "truthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth." Id. (citing 353 U.S., at 421-22). In light of this concern, the Court has admonished that the protection against self-incrimination must be liberally applied. Ullmann v. U.S., 350 U.S. 422, 427 (1956) ("The privilege against self-incrimination serves as a protection to the innocent as well as to the guilty, and we have been admonished that it should be **given a liberal application.**") (emphasis added); Hoffman v. U.S., 341 U.S. 479, 486 (1951) ("This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure.").

  In the civil context, a witness may invoke the privilege against self-incrimination in circumstances in which he or she reasonably believes that disclosures could be used in a criminal prosecution, or provide a link in the chain of evidence to be used in such a manner. Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1263 (9th Cir. 2000) (citing United

<u>States v. Bodwell</u>, 66 F.3d 1000, 1001 (9th Cir. 1995).    A party invoking the Fifth Amendment need only show that prosecution is **possible, not likely.**   In re <u>Master Key Litig.</u>, 507 F.2d 292, 293 (9th Cir. 1974) ("[T]he right to assert one's privilege against self-incrimination does not depend upon the likelihood, but upon the possibility of prosecution.") (citation omitted); <u>Ohio v. Reiner</u>, 532 U.S. 17, 21 (2001) (privilege extends to those who have " 'reasonable cause to apprehend danger from a direct answer' ").

Here, Mr. Wilson's apprehension of fear is more than reasonable given the McKnews' multiple, ongoing representations of an FBI investigation.  The McKnews have accused Mr. Wilson of bank fraud and have represented that an FBI agent (or agents) are investigating business dealings involving both Mr. Wilson and the McKnews.  Moreover, the McKnews have indicated that they want to examine Mr. Wilson regarding financial information to absolve themselves of any purported wrongdoing by apparently presenting the testimony to the FBI.  Indeed, given that the McKnews intend to use a JDE for an entirely improper purpose—namely, to exculpate themselves—**even they have exhibited a reasonable apprehension of criminal prosecution**.

Since asserting his Fifth Amendment privilege, Mr. Wilson has repeatedly inquired why the McKnews' representations about using the examination to gather information in connection with an FBI investigation does **not** create reasonable apprehension.   The McKnews, however, have not provided a substantive response, repeatedly dodging the question or stating very generically that "third-party, unsubstantiated comments from someone unconnected with law enforcement do not support the assertion of the 5th amendment privilege."   Remarkably, the McKnews have never denied that these "third-party, unsubstantiated comments" **come directly from them**, despite having ample opportunity to do so.  Given that (1) the McKnews' counsel are officers of the Court owing, among other things, a duty of candor to the Court and (2) misrepresentations regarding criminal investigations potentially implicate rules of professional conduct, Mr. Wilson has taken the McKnews' representations at face value.  Indeed, Mr. Wilson **has no choice but**

1    **to accept the McKnews' representations at face value, short of accusing them of**

2    **completely fabricating the FBI investigation**.

3         In short, the McKnews have accused Mr. Wilson of bank fraud and have sought to

4    use the JDE to do exactly what the Fifth Amendment protects: elicit self-incriminatory

5    testimony.  The disputed questions outlined in Exhibit 2 all go to financial issues, or are

6    otherwise links to information regarding financial issues, that may be used by the FBI or

7    other agencies in connection with their investigation, which **the McKnews have indicated**

8    **involves financials/financial information**.  In light of the McKnews' representations, the

9    Court should sustain his invocation of the Fifth Amendment, holding that the circumstances

10    created a reasonable apprehension of a **possible** (even if unlikely), criminal prosecution.

11        2.    The McKnews' Analysis of the Fifth Amendment Ignores Their Repeated

12           Statements to Mr. Wilson

13         The McKnews acknowledge that the Fifth Amendment protection applies to instances

14    when the witness has reasonable cause to apprehend danger from an answer, but their

15    analysis of the issue completely misses the point.

16         They state that "it is now clear that throughout more than five-years of litigation with

17    the Judgment Creditors and others that the Debtor has not been contacted by any state or

18    federal prosecuting authority or investigative agency, such as the FBI, a state agency, a

19    sheriff's office, or a local police department, relative to any present or proposed criminal

20    investigation."  They concede that, "[i]f any of these events had happened, such events

21    would provide a sufficient basis for the Debtor's assertion of the Fifth Amendment."  But the

22    McKnews do not acknowledge that Mr. McKnew has represented, through counsel, that he

23    was **in fact contacted by an FBI agent (or agents)** regarding financial

24    dealings/information related to Mr. Wilson and Mr. McKnew.  Indeed, Mr. McKnew's counsel

25    has even stated that he will **provide the name of the FBI agent** conducting the

26    investigation, yet he has never provided the information.

27        Mr. Wilson has accepted the McKnews' representations and, as a result, has a

28    reasonable apprehension that answers to questions posed by the McKnews will be used

against him the context of the FBI investigation.  Indeed, the McKnews have represented that they will use his testimony to exonerate themselves from any purported wrongdoing in the context of the FBI investigation.    Mr. Wilson's fear is completely reasonable given the McKnews' accusations of criminal conduct (documented in writing) and their promise to provide the name the FBI agent conducting an investigation of Mr. Wilson (also documented in writing).

In arguing that Mr. Wilson's fear is unreasonable, the McKnews state: "The Judgment Debtor may turn to third-party out of court statement allegedly made by counsel for the Judgment Creditors as a basis for the assertion of the Fifth Amendment Right claim." The "out of court statements" are a reference to the counsel's direct statements to Mr. Nicastro regarding an FBI investigation, email correspondence between the parties, and the McKnews' stated intent to misuse the JDE process to exculpate themselves at Mr. Wilson's expense.    For Mr. Wilson's fear to be unreasonable in light of counsel's statements, he would have to conclude that the McKnews and/or their counsel have been **intentionally misleading him for months**.  Yet neither the McKnews nor their counsel have ever denied the truth of the prior representations, so Mr. Wilson has no choice but to believe them.  In short, during the course of the parties' meet and confer communications and in the context of the Stipulation, the McKnews and their counsel have never stated that their prior representations were in any way inaccurate, and Mr. Wilson has reasonably relied on them.

3.    The McKnews should be Judicially Estopped from Bringing a Motion to Compel Contradicting their Prior Positions, because it Takes Unfair Advantage of Mr. Wilson

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001).  Judicial estoppel should be invoked "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial

proceedings,' and to 'protect against a litigant playing fast and loose with the courts.' " Id.

(citation omitted).  In deciding whether to invoke estoppel, a court may consider, among

other things, "whether the party seeking to assert an inconsistent position would **derive an**

**unfair advantage or impose an unfair detriment on the opposing party if not**

**estopped.**"  Id. at 783 (9th Cir. 2001) (citation omitted) (emphasis added).  The California

Court of Appeal has noted that misrepresenting the existence of a criminal action is not

subject to the litigation privilege and is indeed "fraught with peril," citing to the California

Rules of Professional Conduct.  Nguyen v. Proton Tech. Corp., 69 Cal. App. 4th 140, 152

(1999) (citing Rule 5-100(A)).

Here, the Mcknews have accused Mr. Wilson of criminal conduct and have lead him

to believe that he is being investigated by the FBI.  They have strung him along by

promising to provide information regarding the investigation, but have never followed

through.  They have indicated that the JDE testimony would be used, not to for collection

purposes, but to somehow exculpate themselves of wrongdoing.  In the context of this

Stipulation, however, their story has taken a different turn.  They are virtually silent about

their prior allegations of criminal conduct and an FBI investigation.  Contrary to their prior

representations, they now state that their motivation for seeking to compel answers is to

obtain information to aid judgment collection efforts.

This sudden about-face leaves only a two possibilities:  either (1) the McKnews made

truthful representations regarding their belief of criminal conduct, an FBI investigation

regarding the same, and their intent to use the JDE process to exculpate themselves (which

resulted in Mr. Wilson's reasonable apprehension of criminal action); or (2) the McKnews

were untruthful regarding the foregoing and are not being candid with the Court.

Regardless of the scenario, they are misusing legitimate discovery tools and taking

inconsistent positions in an effort to take unfair advantage of Mr. Wilson.

Ethical rules create a clear line between the civil and criminal process.  See Cal. R.

Prof Conduct 5-100(A) ("A member shall not threaten to present criminal, administrative, or

disciplinary charges to obtain an advantage in a civil dispute.").  Nguyen v. Proton Tech.

["

Corp., 69 Cal. App. 4th 140, 152 n.11 (1999) (Rule 5-100(A) "exemplifies the principle that **adverting to criminal law matters in the course of purely civil disputes is strongly discouraged**") (emphasis added).  Either the assertions regarding the criminal investigation are true and the McKnews are misusing the civil process (in which case the Fifth Amendment is still implicated) or they are not true (in which case the McKnews should be estopped from compelling testimony based on their false assertions).

In short, the Court should not permit improper and abusive gamesmanship in which a party first threatens and adverts criminal law matters, then becomes conspicuously silent when those threats and adverts became the subject of a dispute, **which they created**. Accordingly, the McKnews should be estopped from seeking an order to compel that exists solely because of their prior comments, which they have (apparently) all but disavowed.

4.    Mr. Wilson's Assertion of the Privilege is Substantially Justified and Not Sanctionable

The party who prevails on a motion to compel is entitled to his or her expenses, including reasonable attorney fees, unless the losing party was substantially justified in making or opposing the motion or other circumstances make such an award unjust.  See Cal. Civ. Proc. Code § 2025.480(j); see also Fed. R. Civ. Proc. 37(a)(5).  Where there is legitimate difference of opinion, an award of expenses is usually improper.  In re Morreale Hotels LLC, 517 B.R. 184, 199 (Bankr. C.D. Cal. 2014) (Kwan, J.).  As discussed above, Mr. Wilson has relied on the McKnew's counsel's statements regarding an FBI investigation and has formed a legitimate apprehension of fear.  Counsel is an officer of the Court and therefore has a duty of candor and likely would not mislead parties regarding something as serious as a federal investigation, so Mr. Wilson's reliance on counsel's statements is reasonable under the circumstances.   Mr. Wilson has yet to receive information from the McKnews regarding the FBI agent (or the investigation), so he is left with no alternative other than to believe that the McKnews are concealing this information to prevent him from doing this own investigation.  Given that the McKnews have indicated that they are attempting to exculpate themselves by potentially presenting Mr. Wilson's testimony to the

FBI, their failure to provide Mr. Wilson information regarding the investigation is even more troubling.    Accordingly, based on the circumstances, Mr. Wilson's assertion of the Fifth Amendment is substantially justified.

5.    The McKnews' Motion and Failure to Acknowledge the Basis for Mr. Wilson's Apprehension is Sanctionable

Counsel for the McKnews has never denied his prior statements and has never provided information regarding the FBI agent/investigation, despite indicating that he would. As reflected in the parties' meet and confer communications, Mr. Wilson has repeatedly sought more information regarding counsel's statements, but has yet to receive a substantive response. For example:

• On November 19, 2014, Mr. Wilson noted, among other things: "Your office still has not explained . . . why the Fifth Amendment privilege is not applicable in light of **your office's representations of a pending investigation of Mr. Wilson**." Matin Decl. at Exhibit 4 (emphasis added).

• On November 20, 2014, the McKnews responded, but did not directly address their prior representations. Id.

• On the same day, Mr. Wilson replied: "I remain puzzled as to why your office won't acknowledge the basis for Mr. Wilson's reasonable apprehension. Namely, your office's **representations that Mr. Wilson is being investigated** and that your client was (and apparently still is) **attempting to use a judgment debtor examination to explicate himself** of any purported wrongdoing with regard to this investigation." Id. (emphasis added)

• On November 22, 2014, the McKnews responded, stating that "third-party, unsubstantiated comments from someone unconnected with law enforcement do not support the assertion of the 5th amendment privilege." See Matin Decl. at Exhibit 5.

Thus, the McKnews have never provided a substantive response addressing their prior statements. Instead, they have chosen to dodge the primary issue implicating the Fifth Amendment by filing a Stipulation that essentially ignores their statements (and the import of

1 | their statements) entirely.  The McKnews' actions are not justified given their pattern of

2 | leading Mr. Wilson to believe that there is a pending FBI investigation.  Their attempt to

3 | compel answers is even more troubling given that they originally sought to conduct a JDE

4 | for a purpose unrelated to judgment collection, yet have done an about-face regarding their

5 | intentions in connection with this Stipulation.  Indeed, only after they were confronted with

6 | their prior statements did the McKnews take the position that the JDE was intended to "aid

7 | in the collection and enforcement" of their judgment.    Their track record, however,

8 | demonstrates otherwise.  The McKnews are abusing the JDE process and should not be

9 | rewarded for it.   Because their actions lack substantial justification, the Court should award

10 | attorneys' fees in the total amount of $7,466 in favor of Mr. Wilson, which represents

11 | counsels' time meeting and conferring on the issues and preparing Mr. Wilson's portion of

12 | the Stipulation. <u>See</u> Matin Decl. ¶ 3-6.

13 | ///

14 | ///

15 | ///

16 | ///

17 | ///

18 | ///

19 | ///

20 | ///

21 | ///

22 | ///

23 | ///

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

# V.

## CONCLUSION

A.   The Judgment Creditors' Conclusion

For the reasons above, the Judgment Creditors respectfully request that this Court enter an Order: **(1)** requiring the Debtor to appear and answer the questions for which he asserted the Fifth Amendment at the Wilson JDW; **(2)** for sanctions against the Judgment Debtor for $5,136.50 in attorneys' fees and cost incurred by the Judgment Creditors for bringing this Motion; and **(3)** for such other and further relief as the Court needs just and proper under the circumstances.

B.   Mr. Wilson's Conclusion

Based on the foregoing, the Court should deny the McKnews' motion to compel answers and award attorneys' fees in favor of Mr. Wilson in the amount of $7,466.

Dated: December 16, 2014          Respectfully submitted,

James Andrew Hinds, Jr.
Paul R. Shankman
Brian Yeretzian
HINDS & SHANKMAN, LLP

By:   /s/  James Andrew Hinds, Jr.
      James Andrew Hinds, Jr.
Attorneys for Plaintiffs and Judgment Creditors
THOMAS I. MCKNEW, IV and LISA A. MCKNEW,
individually and as Trustees of the MCKNEW
FAMILY TRUST DATED MAY 21, 2004

Steve Jay Katzman
Ali Matin
BIENERT, MILLER & KATZMAN, PLC

By:   /s/  Ali Matin
      Ali Matin
Attorneys for Judgment Debtor David A. Wilson