FILED & ENTERED

JUL 02 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

**ORDER NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>DAVID A. WILSON,<br><br>　　　　Debtor. | Case No. 2:12-bk-16195-RK<br><br>Chapter 7<br><br>Adv. No. 2:12-ap-01317-RK |
| THOMAS I. MCKNEW, IV and LISA A. MCKNEW, individually and as Trustees of the MCKNEW FAMILY TRUST DATED MAY 21, 2004,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>DAVID A. WILSON<br><br>　　　　Defendant. | **ORDER ON JUDGMENT CREDITORS' MOTION TO COMPEL ANSWERS OF JUDGMENT DEBTOR** |

　　Pending before the court is the motion of judgment creditors Thomas McKnew and Lisa A. McKnew, individually and as trustees of the McKnew Family Trust ("creditors") to compel the answers of judgment debtor David Wilson ("debtor") to questions they asked him during a judgment debtor examination to which debtor had interposed objections based on his testimonial privilege against self-incrimination under the Fifth Amendment to the United States Constitution. In taking the judgment debtor examination, creditors are

attempting to locate assets of debtor to enforce a judgment in their favor against debtor entered in the above-captioned adversary proceeding.

The court has conducted several hearings on the motion and requested clarification and further briefing regarding the validity of debtor's assertion of the Fifth Amendment privilege. A further hearing on the motion is set for July 8, 2015 at 1:30 p.m. In considering debtor's assertion of the privilege, the court relies upon the traditional Fifth Amendment method of analysis set forth in cases such as *Hoffman v. United States*, 341 U.S. 486 (1951), *United States v. Neff*, 615 F.2d 1235 (9th Cir. 1980), and *United States v. Troescher*, 99 F.3d 933 (9th Cir. 1996).

The court here will quote extensively from the Ninth Circuit's opinion in *United States v. Neff* because that case summarized the law applicable to a court's evaluation of a witness's assertion of the Fifth Amendment privilege with great care:

> To claim the privilege validly a defendant must be faced with "'substantial hazards of self incrimination,'" *California v. Byers,* 402 U.S. 424, 429 (1971) that are "'real and appreciable' and not merely 'imaginary and unsubstantial.'" *Marchetti v. United States*, 390 U.S., 39, 48, quoting in part *Rogers v. United States*, 340 U.S. 367, 374-75 (1951). Moreover, he must have "reasonable cause to apprehend (such) danger from a direct answer" to questions posed to him. *Hoffman v. United States*, 341 U.S. at 486 (1951). The information that would be revealed by direct answer need not be such as would itself support a criminal conviction, however, but must simply "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id*. See also *Hashagen v. United States*, 283 F.2d 345, 348 (9th Cir. 1960). Indeed, it is enough if the responses would merely "provide a lead or clue" to evidence having a tendency to incriminate. *Id*. at 348.
>
> In determining whether such a real and appreciable danger of incrimination exists, a trial judge must examine the "implications of the question(s) in the setting in which (they are) asked . . . ." *Hoffman v. United States*, 341 U.S. at 486; *United States v. Pierce*, 561 F.2d 735, 741 (9th Cir. 1977); *Hashagen v. United States*, 283 F.2d at 350. He "'(m)ust be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'" *Hoffman v. United States*, 341 U.S. at 487, quoting *Ex parte Irvine*, 74 F. 954, 960 (C.C.Ohio, 1896); *United States v. Pierce*, 561 F.2d at 741. If the trial judge decides from this examination of the questions, their setting, and the peculiarities of the case, that no threat of self-incrimination exists, it then becomes incumbent "upon the defendant to show that answers to (the questions) might criminate him." *United States v. Weisman*, 111 F.2d 260, 261 (2d Cir. 1940). See also *Garner v. United States*, 424

2

U.S. 648, 658 n.11 (1976); *United States v. Daly*, supra, 481 F.2d 28, 30 (8th Cir. 1973); *In re U. S. Hoffman Can Corp.*, 373 F.2d 622, 628 (3d Cir. 1967); *Hashagen v. United States*, 283 F.2d at 350. This does not mean that the defendant must confess the crime he has sought to conceal by asserting the privilege. The law does not require him "'to prove guilt to avoid admitting it.'" *Marchetti v. United States*, 390 U.S. at 50, 88, *quoting United States v. Kahriger*, 345 U.S. 22, 34 (1953) (Jackson, J., concurring). But neither does the law permit the defendant to be the final arbiter of his own assertion's validity. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself his say-so does not of itself establish the hazard of incrimination. It is for the court to decide whether his silence is justified . . . ." *Hoffman v. United States*, 341 U.S. at 486. *See also Marchetti v. United States*, 390 U.S. at 50; *Albertson v. SACB*, 382 U.S. 70, 79; *United States v. Johnson*, 577 F.2d 1304, 1311 (5th Cir. 1978); *United States v. Daly*, 481 F.2d at 30; *Hashagen v. United States*, 283 F.2d at 348.

Thus, the defendant is placed in a delicate position, well described by Judge Learned Hand:

Obviously a witness may not be compelled to do more than show that the answer is likely to be dangerous to him, else he will be forced to disclose those very facts which the privilege protects. Logically, indeed, he is boxed in a paradox, for he must prove the criminatory character of what it is his privilege to suppress just because it is criminatory. The only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it permits the suppression of competent evidence, nothing better is available.

*United States v. Weisman*, 111 F.2d 260, 262 (2d Cir. 1940).

*United States v. Neff*, 615 F.2d at 1239-1240.

In *Neff*, the Ninth Circuit explicitly rejected the defendant's assertion of the Fifth Amendment privilege based only on the defendant's "sincerity of belief." *Id.* at 1241. Instead, the Ninth Circuit in *Neff* evaluated the defendant's assertion of the Fifth Amendment privilege based on the questions asked, the setting in which they were asked, and the peculiarities of the case, and determined that the trial court correctly decided that the defendant had no valid Fifth Amendment privilege. *Id.* at 1240-1241. In so holding, the court in *Neff* determined that the questions "did not, of themselves, suggest that the response would be incriminating, nor did the setting in which they were asked" because the answers were "to be completed in the privacy of his own home." *Id.* at 1240. In *Neff,* the Ninth Circuit further determined that the peculiarities of the case did

3

not strengthen assertion of the privilege because the history of the case "suggest[s] that Neff's refusal to complete the forms was motivated by a desire to protest taxes, rather than a fear of self-incrimination." *Id.*

In this case, the court is confronted with a similar situation in that the 251 questions posed by creditors to debtor did not, of themselves, suggest that the responses would be incriminating. Debtor has summarily asserted the privilege to these questions without much explanation as to how his substantive responses would be incriminating. The parties have spent much effort arguing about whether there is a credible threat of self-incrimination based on the possibility that a criminal investigation is in process. There is no credible evidence to corroborate debtor's claim that there is some ongoing criminal investigation of him. Very little effort has been expended by the parties to explain to the court what about creditors' questions would be incriminating.

The court, in analyzing debtor's assertion of the Fifth Amendment privilege under the analytical framework laid out in *Neff*, cannot find any valid basis for his assertion of the privilege. The questions themselves, and the answers they demand, are not inherently incriminating, as they seemed targeted at revealing sources of current income or assets that could be used to satisfy creditors' unsatisfied judgment. The setting, a judgment debtor's examination, is similarly innocuous and not inherently incriminating. Moreover, the peculiar circumstances of this case, which this court is familiar with in its role as the trial court, lead the court to believe that the assertion of the privilege is geared more towards avoiding payment of creditors' judgment rather than towards a true fear of criminal prosecution. In a tentative ruling on the motion, the court indicated that it was inclined to uphold the assertion of the privilege to a number of questions based on a concern that the responses may indicate a criminal act from the lack of disclosure of assets on debtor's bankruptcy petition and schedules. Upon further reflection, the statute of limitations from any concealment of assets in debtor's bankruptcy case would have run from the date of his discharge in 2009, which would have been the general five year statute of limitations for federal crimes, which would have expired by now, six years later.

18 U.S.C. §§ 3282 and 3284.  In any event, any potential concern about deficient schedules should have been obviated by the nature of the creditors' questions because those questions ask only for information relating to debtor's current income, expenses, assets and business activities.  Current financial information would not have been reportable on debtor's bankruptcy petition and schedules.  To the extent that current assets were not disclosed on the bankruptcy petition and schedules, as discussed herein, the statute of limitations on concealment of such assets would have now expired.

During the proceedings relating to this motion, the court made several requests to debtor to submit for in camera review any material to show how the information sought by the questions may be incriminating because the questions, of themselves, did not suggest that the responses would be incriminating.  Debtor has thus far declined these requests.  Debtor has declined to submit material for in camera review by this court based on his interpretation of 18 U.S.C. § 3057.  Debtor construes 18 U.S.C. § 3057 as requiring a bankruptcy judge to act as "a part of law enforcement as much as an assistant United States attorney or an F.B.I. agent," quoting a bankruptcy court in the case of *In re Stockbridge Funding Corp.*, 153 B.R. 654, 656 (Bankr. S.D.N.Y. 1993).  In his supplemental briefing, debtor expands on this argument further by contending that 18 U.S.C. § 3057 applies to "the entirety of the United States Code." *Judgment Debtor's Supplemental Brief*, ECF 444 at 5:18-19 (page:line(s)).  Thus, debtor argues that he is not required to submit material to the bankruptcy court for *in camera* review because such a requirement would impinge on his Fifth Amendment rights based on his construction of the reporting requirement imposed on the bankruptcy court by 18 U.S.C. § 3057.

18 U.S.C. § 3057(a) states, in pertinent part, that "Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts

1  and circumstances of the case. . . ."   As pointed out by debtor, the duty to report under
2  18 U.S.C. § 3057 is not limited to judges of the bankruptcy court, but to judges of all
3  courts, including United States district and circuit courts.   Debtor contends that the
4  phrase "or other laws of the United States" in the statute implies that the reporting duty of
5  the courts is extended to "encompass the entirety of the United States Code."  *Judgment*
6  *Debtor's Supplemental Brief*, ECF 444 at 5:18-19.  Debtor further argues that the clause
7  in the statute "relating to insolvent debtors, receiverships, or reorganization plans" does
8  not limit the "other laws of the United States" clause, but instead, in referring to "insolvent
9  debtors", indicates that 18 U.S.C. § 3057 applies to him as an "insolvent debtor."   *Id.* at
10 6:8-12.

11         Debtor argues his reading of 18 U.S.C. § 3057 is bolstered by the testimony of his
12 counsel, Steven A. Katzman, who identified himself as an expert witness interpreting 18
13 U.S.C. § 3057 and testified that, in his experience, this statute should be interpreted
14 broadly.  While it appears that counsel has had some prior government experience as a
15 United States Trustee and as an Assistant United States Attorney, the court does not
16 accord any weight to such testimony because, as purported expert witness testimony, the
17 court does not find that it will help it as the finder of fact because the testimony is in the
18 nature of legal opinion.   *United States v. Boulware,* 558 F.3d 971, 975 (9th Cir. 2009)
19 (trial court's exclusion of expert testimony to the extent the testimony constituted a legal
20 opinion "was well within its discretion"), *citing inter alia, Nationwide Transport Finance v.*
21 *Cass Information Systems, Inc.,* 523 F.3d 1051, 1059-1060 (9th Cir. 2008) ("[A]n expert
22 witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate
23 issue of law.") (emphasis in original); *see also,* 2 Jones, Rosen, Wegner and Jones,
24 *Rutter Group Practice Guide: Federal Civil Trials and Evidence,* ¶ 8:1395 at 8F-4 (2014)
25 ("Pure questions of law are not proper subjects of expert testimony."), *citing, Myers v.*
26 *Bowman,* 713 F.3d 1319, 1328 (11th Cir. 2013).  Counsel's expert witness opinion
27 testimony on what the law is not proper expert witness testimony and will be excluded
28 because his testimony is strictly legal opinion and thus cannot help the court "understand

the evidence or to determine a fact in issue".  *Id.*; Fed. R. Evid. 702; *United States v. Boulware,* 558 F.3d at 975.

There is apparently little, if any, case law interpreting the scope of 18 U.S.C. § 3057 in regards to what laws it imposes a reporting requirement on, and thus the court must interpret the statutory language based on the usual methods of statutory analysis, starting first with the plain language of the statute.  See *United States v. Ron Pair Enterprises,* 489 U.S. 235, 241 (1989).  The court determines that the plain language of 18 U.S.C. § 3057 indicates that it is to be read to require the reporting by judges only of "laws relating to insolvent debtors, receiverships or reorganizations" and not of any violation of any United States law by an insolvent debtor, as urged by debtor.

The court begins its analysis with the language of the statute as it must.  *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. at 241 ("The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself.") (citation omitted).  "[W]here . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Id.* (citation and internal quotation marks omitted).  "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain,* 503 U.S. 249, 253-254 (1992).  The court reads the "under chapter 9 of this title or other laws of the United States relating to…" clause of the statute as an example of parallel structure, where ideas of the same rank are placed in the same grammatical structure.  Laurie Rozakis, *English Grammar for the Utterly Confused* at 137 (2003).  Here, "under chapter 9 of this title" and "other laws of the United States relating to…" are both ideas of equal rank intended to clarify which suspected violations are subject to § 3057's reporting requirement. Debtor's reading would render both clauses superfluous because it would apply to all violations committed by an insolvent debtor.

The word "relate" means "to have relationship or connection <the readings ~ to his lectures>". *Merriam-Webster Online Dictionary,* http://merriam-webster.com/

7

Case 2:12-ap-01317-RK    Doc 463    Filed 07/02/15    Entered 07/02/15 17:28:45    Desc
Main Document    Page 8 of 11

dictionary/relate (online ed., accessed on June 24, 2015). Using that definition, the language of the statute is clear, and it refers to suspected violations of "laws [that have a relationship or connection] to insolvent debtors, receiverships, or reorganizations." Here, the phrase "relating to insolvent debtors, receiverships, or reorganizations" functions as postmodifier of "other laws of the United States" – the noun of this clause, specifically, as a relative –ing participle clause. Greenbaum, *The Oxford English Grammar* at 219-220 (1996). As a postmodifier, "relating to insolvent debtors, receiverships, or reorganizations" should modify the noun, thus creating a subset of the "laws of the United States" – those related to insolvent debtors, receiverships, or reorganizations. Debtor's construction of 18 U.S.C. § 3057 would reverse this and cause the subset of laws categorized under § 3057 to be amorphous because the applicable law would be defined by the suspected perpetrator rather than the text of the law itself. Such a construction does not accord with a normal reading of the plain language of the statute, which attempts to define a rigid category of laws subject to the reporting requirement in § 3057.

The court further holds that application of the surplusage canon of statutory construction requires the court to discard debtor's interpretation of the statute. The surplusage canon of statutory construction requires the court to "avoid a reading [of a statute] that renders some words altogether redundant." Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012), *citing inter alia, Lowe v. S.E.C.*, 472 U.S. 181, 208 n. 53 (1985)(per Stevens, J.) ("[W]e must give effect to every word that Congress used in the statute."); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)(per Burger, C.J.) ("In construing a statue we are obliged to give effect, if possible, to every word Congress used."). Debtor's construction of 11 U.S.C. § 3057 would render superfluous the part of the statute referring to "any violation under chapter 9 of this title" because that subset of laws is subsumed by the second part of § 3057, which refers to "any other laws of the United States". There is no reason that the drafters of 18 U.S.C. § 3057 would have first identified a specific subset of laws and then applied the reporting requirement to a violation of any law by an insolvent debtor. Because debtor's

interpretation of the statute would render superfluous a portion of the statute, the court concludes that 18 U.S.C. § 3057 must be read to impose the reporting requirement only on suspected violations of chapter 9 of title 18 or of other United States laws which have a relationship or connection to "insolvent debtors, receiverships, or reorganization plans".

Other bankruptcy courts, to the extent they have considered the issue, appear to agree with this result. For example, in *In re Canoe Manufacturing Co., Inc.*, 466 B.R. 251, 263 (Bankr. E.D. Pa. 2012), the court interpreted 18 U.S.C. § 3057 in the context of a motion to reopen, and held that there was no valid bankruptcy purpose to reopen in order to ask the court to order an investigation pursuant to 18 U.S.C. § 3057. The court in *Canoe Manufacturing Co., Inc.* appears to have determined that it was unable to do so for three reasons: (1) the movant "did not identify any violations of the Bankruptcy Crimes Act found in Title 18, Chapter 9, 18 U.S.C. §§ 151-58"; (2) the "allegedly criminal behavior [] occurred in another forum and many years after this bankruptcy case was closed"; and (3) the alleged violations were "vetted and rejected by the state court system in which such allegedly wrongful conduct occurred". 466 B.R. at 263. Although the determination was not central to that court's decision, it appears that the court interpreted 18 U.S.C. § 3057 to apply only to violations of the Bankruptcy Crimes Act, which accords with this court's interpretation of the statute.

Similarly, the court in *In re Prosser*, 2011 WL 6440879 (Bankr. D. V.I. 2011) (unpublished opinion), discussed in more detail its interpretation of the scope of the reporting requirement imposed by 18 U.S.C. § 3057, and contrasted that statute with the reporting requirement imposed on the United States Trustee by 28 U.S.C. § 586(a)(3)(F), which requires the United States Trustee to notify "the appropriate United States attorney of matters which relate to the occurrence of any action which may constitute a crime under the laws of the United States. . . ." *Id.,* slip op. at 35 n. 73. The court in *Prosser* determined that the United States Trustee's duty to report under 28 U.S.C. § 586(a)(3)(F) "is even broader than that set forth in 18 U.S.C. § 3057, requiring a judge, trustee, or receiver to report bankruptcy crimes or crimes relating to insolvent debtors."

9

*Id.* This further shows that other courts have interpreted 18 U.S.C. § 3057 to apply only to bankruptcy-related crimes, as does this court.

Finally, the court notes that, even if debtor's reading of 18 U.S.C. § 3057 were correct, and the statute imposes a reporting requirement for any suspected violation of any law by an "insolvent debtor," debtor has made no showing that he is an insolvent debtor for purposes of 18 U.S.C. § 3057. Debtor's bankruptcy case was commenced on August 13, 2008 when he filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C., and he received his bankruptcy discharge on September 21, 2009. Almost seven years have passed since debtor filed his bankruptcy case and, assuming *arguendo* that debtor was an insolvent debtor at the time he filed bankruptcy, he has not offered any evidence or argument to convince the court that he should be considered an insolvent debtor now, eight years later. Before debtor filed his bankruptcy case, he was in the business of construction contracting, and apparently has engaged in that business or occupation since then. There is no factual basis to assume that he has remained insolvent since then, particularly since he received a Chapter 7 bankruptcy discharge of his prebankruptcy dischargeable debts in 2009, almost six years ago. Without such a showing, there is no reason to determine that 18 U.S.C. § 3057 applies in these circumstances, and the court should order debtor to answer the questions posed to him, absent some affirmative showing by debtor other than only his say-so that his responses would be incriminating. Because the court determines that 18 U.S.C. § 3057 applies only to bankruptcy crimes under Chapter 9 of the Federal Criminal Code, 18 U.S.C., or parallel nonbankruptcy crimes relating to insolvent debtors, receiverships or reorganization plans, 18 U.S.C § 3057 does not *per se* justify debtor's refusal to respond to the questions under the Fifth Amendment based on his status as an alleged insolvent debtor. The court determines that, in the alternative, 18 U.S.C. § 3057 does not excuse debtor's refusal to respond to creditors' questions on Fifth Amendment grounds because debtor has not shown with sufficient evidence that he is an insolvent debtor for purposes of this statute.

Thus, the court determines that debtor is not excused from submitting an *in camera* explanation as to why answering the questions posed by creditors is potentially self-incriminating, as required by *Hoffman* and *Neff*. However, because the court believes that debtor may have relied upon erroneous legal advice about the applicability of the Fifth Amendment privilege based on an incorrect reading of 18 U.S.C. § 3057, the court will afford debtor a further opportunity to submit material for *in camera* review to show the court that his assertion of the Fifth Amendment privilege is proper. If debtor does not submit further material *in camera* sufficient for the court to consider the validity of his assertion of the Fifth Amendment privilege to creditors' questions by August 15, 2015, the court will assume that there is no further information to consider and will order debtor to answer the questions as presented by creditors.

The continued hearing on the motion set for July 8, 2015 at 1:30 p.m. is vacated, and the court sets a further hearing on the motion for August 25, 2015 at 3:00 p.m. after the deadline for debtor to make an *in camera* submission. Separate orders on the parties' respective motions to strike declarations in support or in opposition to the instant motion to compel are being entered currently herewith.

IT IS SO ORDERED.

###

Date: July 2, 2015

_____
Robert Kwan
United States Bankruptcy Judge

11